IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BOARD OF TRUSTEES OF CEMENT MASONS' LOCAL 526 COMBINED FUNDS, INC. Plaintiff, | ) ) ) ) | |
| vs | ) ) | Civil Action No. 17-1432 |
| R & B CONTRACTING & EXCAVATION, INC., et al., Defendants. | ) ) ) ) | Magistrate Judge Mitchell |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Board of Trustees of Cement Masons' Local 526 Combined Funds, Inc. ("Cement Masons") brought this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1100-1145 (ERISA), against Defendants, R & B Contracting & Excavation, Inc. ("R & B"), William Rogers, Richard Roscoe and Daniel Amato. Plaintiff seeks certain sums of money owed by R & B to the Cement Masons' Combined Funds for fringe benefit contributions for employees who perform classified work, pursuant to a collective bargaining agreement (CBA). On August 8, 2018, the Court entered an approved Consent Decree against R & B in the amount of $75,886.49 (including $53,216.49 in contributions owed with penalties and interest, $15,225.00 in attorney's fees and $7,445.00 in audit fees) (ECF No. 33).

Presently before the Court is a motion for summary judgment, filed by the Plaintiff against individual Defendants Roscoe and Amato. Plaintiff contends that these two individuals filled in during an extended leave of absence of R & B's owner (Rogers), and thereby became ERISA plan fiduciaries. Thus, it contends that they have breached their fiduciary duty to the Cement Masons' Funds and are personally liable for R & B's delinquent fringe benefits (Count II) and that they committed the tort of conversion (Count III). Roscoe and Amato deny that they are fiduciaries under ERISA or that they are liable for conversion. For the reasons that follow,

the motion will be granted with respect to Count II and denied with respect to Count III.

Facts

Cement Masons are ERISA multi-employer employee benefit plans composed of a Defined Benefit Pension Plan, a Defined Contribution Pension Plan, a Welfare plan, a Supplemental Income Plan, and an Apprenticeship & Journeyman Education & Training Plan. The plans are financed through employer contributions made in accordance with applicable collective bargaining agreements. (Sansosti Aff. ¶ 2)[1]

R & B was engaged in the business of operating a construction company in Western Pennsylvania. (Sansosti Aff. ¶ 3.) Rogers is the owner and sole shareholder of R & B. (Roscoe Dep. 13:7-14; Amato Dep. 18:13-17.)[2]

Rogers took an extended leave of absence from R & B, for a period of at least 3-4 years from 2014 to 2017 for health reasons. (Roscoe Dep. 19:18-20:16.) During this time period, Rogers would only be in the office a couple of times a week. (Roscoe Dep. 20:17-21.) Some weeks, Rogers was not in the office at all. (Amato Dep. 35:1-5.)

Throughout his absence, although Rogers had authority over who would get paid, Roscoe and Amato took over certain operations of R & B, including the payment of fringe benefits to the Cement Masons. (Roscoe Dep. 16:19-17:19, 19:1-17, 20:22-25; Amato Dep. 19:15-24.)

Collective Bargaining Agreement ("CBA")

R & B is a signatory to Pittsburgh Building Trades Agreement ("Collective Bargaining

---

[1] Pl.'s App. (ECF No. 39) Ex. 1. Plaintiff contends that this fact and indeed all of its factual statements should be "deemed admitted" pursuant to Federal Rule of Civil Procedure 56(e) and Local Rule 56(E). Although Roscoe and Amato have not properly responded to Plaintiff's statements, they did submit their own version of the facts (ECF No. 44), to which Plaintiff has responded (ECF No. 46). Therefore, the Court will consider the facts as stated by each party and supported by the record.
[2] ECF No. 39 Exs. 4, 5.

Agreement" or "CBA") with the Cement Masons' Union Local No 526 of the Operative Plasters' and Cement Masons' International Association. (Sansosti Aff. ¶ 4.) R & B was required to pay funds into the union for work covered by the CBA. (Sansosti Aff. ¶ 5; CBA at 8, 10, 32, 34.[3])

Under the CBA, R & B was required to pay into the Cement Masons for the Defendant's employees who perform classified work. (Roscoe Dep. 25:20-25; Sansosti Aff. ¶ 5.) In addition to failing to make payments owed for union cement masons, R & B also used non-union labor for work covered by the collective bargaining agreement. (Roscoe Dep. 25:20-25.)

<u>R & B's Delinquent Fringe Benefit Contributions to the Cement Masons</u>

The CBA provides for assessment of interest, late charges/liquidated damages, and attorney's fees and costs for each month that R & B failed to timely submit payment to the Cement Masons. (CBA at 33.) R & B failed to make payment to the Cement Masons for classified work performed by Defendant's employees during the work months of July 2015; September 2016; April, June, July, August, and September 2017; October, November, and December 2017. (Audit Report[4]; Sansosti Aff. ¶ 9.)

R & B's delinquent contributions, with penalties and interest total $53,216.49. (Audit Report at 3; Kramer Aff. ¶ 5[5]; Sansosti Aff. ¶ 9.) Additionally, there became owing $15,225.00 in attorney's fees and costs and $7,445.00 in audit fees. (ECF No. 33.) The sum total owed is $75,886.49. (<u>Id.</u>) This Court entered a consent judgment against R & B on August 8, 2018 in the amount of $75,886.49 (including $53,216.49 in contributions owed with penalties and interest, and $15,225.00 in attorney's fees, and $7,445.00 in audit fees).

<u>Richard Roscoe</u>

---

[3] ECF No. 39 Ex. 2.
[4] ECF No. 39 Ex. 3.
[5] ECF No. 39 Ex. 6.

Roscoe was Project Manager during his 12-year tenure at R & B, from around 2005 to 2018. (Roscoe Dep. 11:18-22.) He was not a shareholder or officer. (Roscoe Dep. 13:6-19.) He also is not a party to or signatory to the CBA with Cement Masons (ECF No. 39 Ex. 2.)

Roscoe handled day-to-day operations at R & B. Rogers gave Roscoe authority to determine who would get paid. (Roscoe Dep. 16:19-17:19.) Roscoe states that he had no check-writing authority related to payments of wages or fringe benefits owed by R & B. (Roscoe Dep. 17:20-25.) He also states that he did not have any responsibility for submitting fringe benefit contributions to the Cement Masons. (Roscoe Dep. 16:3-23.) He testified that the shareholder and officer of R & B would make decisions regarding the payment of fringe benefit contributions to the Cement Masons. (Roscoe Dep. 16:6-23.) He further stated that he did not have any contact with the Cement Masons when a payment was delinquent (Roscoe Dep. 21:15-24) and that he did not take part in preparation of certified payroll reports or audits related to the Cement Masons (Roscoe Dep. 26:18-27:9).

Roscoe admits, however, that although it was not fully up to him, in terms of submitting fringe benefit contributions to the Cement Masons, "I told people what to pay sometimes, or whatever, you know...." (Roscoe Dep. 16:9-17.) He stated that "I kind of ran everything." (Roscoe Dep. 11:18-20.) Roscoe quit R & B in December of 2017, because "I just couldn't do everything, and he [Rogers] wasn't helping me...." (Roscoe Dep. 11:12-16, 29:22-30:17.)

<u>Daniel Amato</u>

Amato held the position of Controller at R & B. (Amato Dep. 11:19-23) from February 2016 to approximately March 2018. (Amato Dep. 11:2-12, 12:1-12.) Amato's job duties included: preparing financial reports, collection of receivables, and reconciling account balances among other duties. (Amato Dep. 17:16-18:9.)

Amato was not a shareholder or officer of R & B. (Amato Dep. 18:10-19:4.) He also is not a party to or signatory to the CBA with Cement Masons (ECF No. 39 Ex. 2.) He testified that he has never seen the CBA. (Amato Dep. 23:13-21.)

Amato had authority over the submitting of checks to the Cement Masons and issued checks to the Cement Masons. (Roscoe Dep. 19:1-17.) Amato would deal with the communications with the Cement Masons regarding payment of the delinquent fringe benefits. (Roscoe Dep. 21:15-25.)

ERISA Breach of Fiduciary Duty (Count II)

The CBA contains the following language as R & B's employer obligations to pay fringe benefits to the Cement Masons:

> ARTICLE III
> Wage Rates, Fringe Benefit Schedules
>
> Section 1. The Employer agrees to pay hourly wage rates for all journeymen, foremen, general foremen and apprentices covered by this Agreement in accordance with the following schedule.

(CBA at 8.)

The CBA states:

> Employer fringe benefit contribution will be submitted on all hours worked by journeymen, foremen, general foremen and apprentices covered by the Agreement in accordance with the Wage Rate and Fringe Benefit Schedule.

(CBA at 9.)

The CBA additionally states:

> ARTICLE XXI
> Contributions and Deductions
>
> Section 1. The weekly pay envelope, check stub or payroll record shall clearly indicate the amount of money deducted from the gross wages of the Employee for Social Security, withholding or wage taxes, dues

> deductions, etc. and shall also clearly indicate the amount of Employer contributions to be submitted to the Cement Masons' Local 526 Supplemental Income Fund, Cement Masons' Local No. 526 Savings & Annuity Fund, or any other fund created by the Union permitted under Section 1 of Article III of this Agreement, for and on behalf of the Employee.

(Id. at 32.)

The CBA states:

> [I]t is agreed that the Employer shall consolidate all monthly payments due to any of the foregoing Funds and submit a single check made payable to: CEMENT MASONS LOCAL 526 COMBINED FUNDS, INC., 2606 CALIFORNIA AVENUE, PITTSBURGH PA 15212.

(Id. at 34.)

Roscoe decided who would get paid, including sending fringes to the Cement Masons during the period at issue, from 2015 to 2017. (Roscoe Dep. 17:8-19.) Roscoe directed the signing of R & B checks. (Roscoe Dep. 17:20-18:20.) Roscoe admits that although it was not fully up to him, in terms of submitting fringe benefit contributions to the Cement Masons, "I told people what to pay sometimes, or whatever, you know...." (Roscoe Dep. 16:9-17.) Roscoe directed any and all payments from R & B to the Cement Masons. (Amato Dep. 24:4-16.)

Amato's duties at R & B included collection of receivables. (Amato Dep. 17:16-18:9.) Amato denies that his "job duties" entailed payment to the Cement Masons under the CBA (Amato Dep. 24:5-25.) He also states that he had no check-writing authority related to wages or fringe benefits of R & B until November 2017 (Amato Dep. 25:17-21) and that he did not take part in preparation of payroll reports or audits related to the Cement Masons (Amato Dep. 27:5-8, 30:11-31:8).

Nevertheless:

(a) Amato went to the Cement Masons' office in person, on or about August 16, 2017, to

sign a joint check for R & B's payment of fringe benefits. (Sansosti Aff. ¶ 12.)

(b) On or about May 11, 2017, Amato called the Cement Masons' office, inquiring why the Cement Masons requested a certified check for fringe benefits from R & B. (Sansosti Aff. ¶ 10.)

(c) Amato asked for the Cement Masons' request for a certified check to be in writing and emailed to Roscoe, Rogers and himself. (Sansosti Aff. ¶ 11.)

(d) The Cement Masons previously dealt with R & B employee Rhonda Roscoe for payment of fringe benefits. Amato, however, advised the Cement Masons "Don't bother Rhonda with fringe benefits." (Sansosti Aff. ¶ 13.)

(e) Amato represented to the Cement Masons that "he fully intended to pay the amount of delinquent fringe benefit contributions [owed] by R & B." (Sansosti Aff. ¶ 14.)

<u>State Common Law Conversion Action (Count III)</u>

The CBA vests title of fringe benefit contributions to the Cement Masons. (CBA at 8, 10, 32.) Roscoe was responsible for directing payment of R & B corporate expenses, where he had authority to determine who got paid. (Roscoe Dep. 16:19-17:19.) Roscoe failed to pay to the Cement Masons fringe benefit contributions when due. (Roscoe Dep. 16:9-17; Audit Report at 3; Kramer Aff. ¶ 5; Sansosti Aff. ¶ 9; ECF No. 33.)

Delinquent fringe benefit contributions owed to the Cement Masons were used to pay for other R & B corporate expenses. (See Roscoe Dep. 16:9-17; Audit Report at 3; Kramer Aff. ¶ 5; Sansosti Aff. ¶ 9; ECF No. 33.) Amato, as R & B's Controller, reconciled entries to the balance sheet and took care of collection of receivables. (Amato Dep. 17:16-18:9.)

<u>Procedural History</u>

Plaintiff filed this action on November 2, 2017. Federal question jurisdiction is based on

the claims under ERISA, 28 U.S.C. § 1331; 29 U.S.C. § 1332.[6] (Compl. ¶ 10.) Count I is an ERISA collection action against R & B. Count II alleges breach of fiduciary duty by Rogers, Roscoe and Amato. Count III alleges a claim of conversion under Pennsylvania law against Rogers, Roscoe and Amato.

As noted above, on August 8, 2018, the Court entered an approved Consent Decree against R & B in the amount of $75,886.49 (including $53,216.49 in contributions owed with penalties and interest, $15,225.00 in attorney's fees and $7,445.00 in audit fees) (ECF No. 33).

On October 31, 2018, Plaintiff filed the pending motion for summary judgment against Roscoe and Amato (ECF No. 36).[7] On November 26, 2018, Roscoe and Amato filed a brief in opposition (ECF No. 43) and on December 7, 2018, Plaintiff filed a reply brief (ECF No. 45).

Standard of Review

The Federal Rules of Civil Procedure provide that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Indus. Corp.

---

[6] Plaintiff also cites the Labor Management Relations Act, 29 U.S.C. § 185, but the Complaint contains no claims under this statute.
[7] Rogers filed a Suggestion of Bankruptcy on July 3, 2018 (ECF No. 28) and thus the automatic stay of the claims against him went into effect, 11 U.S.C. § 362.

8

v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court of Appeals has held that "where the movant bears the burden of proof at trial and the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." National State Bank v. Federal Reserve Bank, 979 F.2d 1579, 1582 (3d Cir. 1992).

In following this directive, a court must take the facts in the light most favorable to the non-moving party, and must draw all reasonable inferences and resolve all doubts in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265, 266 (3d Cir. 2005); Doe v. County of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001).

Plaintiff argues that: 1) unpaid contributions were the assets of Cement Masons' fund; 2) Roscoe and Amato maintained discretionary control over fringe benefits owed by determining what bills to pay, overseeing collection of accounts receivable and taking responsibility for submitting remitting reports and thus they are liable as ERISA fiduciaries; and 3) their actions also constitute conversion of Cement Masons' property.

Roscoe and Amato respond that: 1) they were not ERISA fiduciaries because they were involved only in day-to-day affairs, but not oversight and payroll decisions and they did not sign the CBA; 2) they had no signing authority and made no payment of fringe benefits; and 3) they are not liable for conversion because they were only employees.

In a reply brief, Plaintiff argues that: 1) Roscoe and Amato were ERISA fiduciaries because they did not have to be "principals" or "owners" and fiduciary status is not limited to a single person or to people who sign a CBA; and 2) they have not really disputed their liability for

conversion because it is undisputed that payments were not made and individuals who take part in torts committed by a corporation are personally liable for those torts.

Count II: ERISA Fiduciary Liability

ERISA provides that:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a). The statute states that a person is a "fiduciary":

> to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A).

Plaintiff relies upon the first definition and thus, to determine whether Roscoe and Amato were ERISA fiduciaries, "the court must determine: 1) whether the unpaid contributions were plan assets; and 2) whether [they] exercised discretionary control or authority over such assets." PMTA-ILA Containerization Fund v. Rose, 1995 WL 461269, at *4 (E.D. Pa. Aug. 2, 1995). Accord Laborers' Combined Funds of W. Pa. v. Molinaro Corp., 234 F. Supp. 3d 660, 665 (W.D. Pa. 2017); Laborers Combined Funds of W. Pa. v. Cioppa, 346 F. Supp. 2d 765, 771 (W.D. Pa. 2004).

The Court of Appeals has explained that:

> "ERISA ... defines 'fiduciary' not in terms of formal trusteeship, but in functional

terms of control and authority over the plan." Mertens v. Hewitt Assocs., 508 U.S. 248, 262, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). Accordingly, "[f]iduciary duties under ERISA attach not just to particular persons, but to particular persons performing particular functions." Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1158 (3d Cir.1990). Accordingly, "a person is a fiduciary with respect to a plan only to the extent that he has any discretionary authority or discretionary responsibility in the administration of such plan." Varity Corp. v. Howe, 516 U.S. 489, 527, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (internal quotation marks omitted).

In re Unisys Corp. Retiree Med. Benefits ERISA Litig., 579 F.3d 220, 228 (3d Cir. 2009).

Furthermore: "This Court recognizes that the "significant difference between the two clauses [of subsection (i)] is that discretion is specified as a prerequisite to fiduciary status for a person managing an ERISA plan, but the word 'discretionary' is conspicuously absent when the text refers to assets." Srein v. Frankford Trust Co., 323 F.3d 214, 221 (3d Cir. 2003) (quoting Board of Trustees of Bricklayers & Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assocs. Inc., 237 F.3d 270, 273 (3d Cir. 2001)).

Thus, the fact that Roscoe and Amato were not officers or shareholders in R & B is not dispositive of the issue of whether they were fiduciaries. Nor does the fiduciary standard limit personal liability to the "sole" or "only person" responsible for benefit contributions to a fund; although this was true of individual defendant in Molinaro (Leone was the sole director, shareholder and officer of Molinaro Corporation), the case did not turn on that point, but rather on the fact that he "exercised control over the plan assets at issue," 234 F. Supp. 3d at 667. And "any" control over disposition of plan money – not just discretionary control – makes the person who has such control a fiduciary. Wettlin, 237 F.3d at 273.

Roscoe and Amato cite Carpenters Combined Fund, Inc. by Klein v. Lucci, 2017 WL 4023317 (W.D. Pa. Sept. 13, 2017), as a case in which an individual was held not to be an ERISA fiduciary. Plaintiff responds that, in Lucci, the court held the position of "vice president"

11

was insufficient by itself to establish the individual (Velotta) as a fiduciary along with his 25% ownership in the company and there was no evidence that Velotta handled any plan assets on the basis of his title or ownership interest alone. Id. at *10-12. The court noted that the evidence was disputed as to whether Velotta was an officer of the corporation during the relevant time, that there was no evidence that he signed any checks during that time period and that even if someone used his signature stamp after he no longer worked for the company this would not establish that he exercised control over plan money.

In this case, by contrast, it is undisputed that: Roscoe and Amato were employed at R & B at the relevant time, Roscoe directed any and all payments from R & B to the Cement Masons, that Amato prepared financial reports, collection of receivables and reconciling account balances among other duties and communicated with the Cement Masons regarding payment of delinquent fringe benefits, Amato went to the Cement Masons' office in person on August 16, 2017 to sign a joint check for R & B's payment of fringe benefits, Amato called the Cement Masons' office on May 11, 2017 to inquire why they had requested a certified check and subsequently asked the Cement Masons to send the request for a certified check in writing to Rogers, Roscoe and himself and Amato represented to the Cement Masons that "he fully intended to pay the amount of delinquent fringe benefit contributions owed by R & B." Thus, Roscoe and Amato are in the same factual situation as the defendants in Cioppa, Rose and cases cited therein. They were ERISA fiduciaries who failed to make fringe benefit payments. Therefore, with respect to Count II, the motion for summary judgment will be granted.

Count III: Conversion

Under Pennsylvania law, conversion is "the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent

12

and without lawful justification." HRANEC Sheet Metal, Inc. v. Metalico Pittsburgh, Inc., 107 A.3d 114, 119 (Pa. Super. 2014) (quoting McKeeman v. Corestates Bank, N.A.,751 A.2d 655, 659 n.3 (Pa. Super. 2000)). Plaintiff contends that it is undisputed that: the unpaid contributions were the Cement Masons' Funds plan asserts based on the language in the CBA; that R & B did not make payment for fringe benefits for July 2015, September 2016, April, 2017 and June through December 2017; and that Roscoe and Amato failed to turn over the fringe benefits to the Cement Masons. It also argues that, under Pennsylvania's "participation theory," "an individual who takes part in the commission of a tort by a corporation is personally liable for that tort." (ECF No. 45 at 8).

However, the case law Plaintiff cites actually refers to "a corporate officer" who takes part in the commission of a tort. Cioppa, 346 F. Supp. 2d at 773; Molinaro, 234 F. Supp. 3d at 668; Laborers' Combined Funds of W. Pa. v. Parkins, 2002 WL 31435287, at *4 (W.D. Pa. June 5, 2002). They have not cited any authority to support the argument that an individual who is not a corporate officer but whose liability is based on the broad definition of "fiduciary" in ERISA can likewise be held liable for conversion under the participation theory of Pennsylvania law. Therefore, with respect to Count III, the motion for summary judgment will be denied.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BOARD OF TRUSTEES OF CEMENT MASONS' )
LOCAL 526 COMBINED FUNDS, INC. )
        Plaintiff, )
         )
vs )    Civil Action No. 17-1432
         )
R & B CONTRACTING & EXCAVATION, INC., )    Magistrate Judge Mitchell
et al., )
        Defendants. )

## ORDER

AND NOW, this 26th day of March, 2019, for the reasons explained in the opinion above,

IT IS HEREBY ORDERED that the motion for summary judgment filed by Plaintiff, Board of Trustees of Cement Masons' Local 526 Combined Funds, Inc. (ECF No. 36) is granted with respect to Count II and denied with respect to Count III.

                                            s/Robert C. Mitchell
                                            ROBERT C. MITCHELL
                                            United States Magistrate Judge